O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| ANGEL LUIS GONZALEZ MARTINEZ ET AL. § § § v. § § SERVICIOS DE TRANSPORTACION, § M.G., S.A. de C.V. ET AL. § | Civil No. L-05-60 |

### MEMORANDUM

Pending is a Motion to Dismiss by Defendant Servicios de Transportacion, M.G., S.A. de C.V. ("Servicios"), for lack of personal jurisdiction, or, in the alternative, for forum non conveniens. (Docket No. 17.) For reasons described below, the Court GRANTS this Motion to Dismiss.

### Background

This action arises out of a vehicle accident occurring in the Republic of Mexico between a pickup truck and a tractor-trailer. (Docket No. 1 at 5.) According to the complaint, the larger vehicle, owned by Servicios and driven by a Servicios driver, collided with the rear end of the pickup truck, killing the driver, Ramon Ortiz Flores, and injuring three passengers, Angel Luis Gonzalez Martinez and his two sons, Victor M. and Angel L. Gonzalez. Id. at 4-5.

At the time of the accident, Angel Luis Gonzalez Martinez resided in San Antonio, Texas.[1] (Docket No. 1 at 1.) He owned the pickup truck involved in the accident and his two sons, Victor M. and Angel L. Gonzalez, were passengers in the vehicle. Id. The two sons and their mother, Carmen Marcano, resided in Illinois at the time of the accident. Id. at 2. Maria de Jesus Zamora Quevedo and her deceased husband, Ramon Ortiz Flores, were both residents of Mexico at the time of the accident. Id. Defendant Servicios is a Mexican corporation. (Docket No. 17 at 3.) It owned the tractor involved in the accident, which was pulling a trailer leased from Defendant XTRA Lease L.L.C.'s Texas facility. (Docket No. 1 at 4.)

Essentially these same plaintiffs originally filed suit against Defendants in Illinois, only to have the case dismissed on personal jurisdiction grounds. (Docket No. 27 at 2.) That court specifically declined to rule on the potential for personal jurisdiction in Texas, although it expressed doubt as to whether such jurisdiction would exist. Marcano v. Garcia, 2004 WL 1610812 at 3 (N.D. Ill.). Plaintiffs then brought the present action in this Court.

**Personal Jurisdiction**

For a federal court to assert personal jurisdiction over a nonresident defendant, the defendant must be amenable to service of process under the forum state's long-arm statute, and the exercise of jurisdiction must comport with the constitutional requirement of due process. Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1361 (5th Cir. 1990). As the Texas long-arm

---

[1] There is some dispute as to whether Angel Luis Gonzalez Martinez was actually residing in Texas or in Mexico at the time of the accident. (Docket No. 36 at 2.) For the purposes of this ruling, it is assumed that he was residing in San Antonio, Texas. Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) (conflicts in evidence are resolved in favor of the plaintiff in determining whether to dismiss for lack of a *prima facie* case of personal jurisdiction).

statute extends as far as the Due Process Clause of the Fourteenth Amendment, Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990), the Court may exercise personal jurisdiction as long as such exercise complies with the due process clause of the fourteenth amendment.

For personal jurisdiction over a nonresident defendant to satisfy due process, the resident must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). Minimum contacts may give rise to either specific personal jurisdiction, if the suit arises out of or relates to the contacts, or general personal jurisdiction, if the suit is unrelated to the contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

*Specific Jurisdiction*

This court has no specific jurisdiction over Servicios. In a similar case, Felch v. Transportes Lar-Mex S.A. de C.V., an accident occurred in Mexico, the injured party died in Mexico, and any negligence on the part of the defendant occurred in Mexico. 92 F.3d 320, 321, 324 (5th Cir. 1996). The Fifth Circuit held that those facts precluded a finding that the litigation resulted from injuries arising out of or related to various leasing and other commercial contacts between Lar-Mex and Texas. Id. at 324. The same result follows in the instant case.

*General Jurisdiction*

Contacts with a forum may give rise to general jurisdiction even if an action does not arise out of those contacts, but the contacts must be "continuous and systematic." Helicopteros Nacionales at 414-415. For example, this Court has found general jurisdiction where a carrier

was authorized to do business and did in fact do business in Texas, transporting over 1700 loads of cargo across the border in a four-year period, regularly doing business with Laredo-based companies, and receiving shipments, soliciting business, forming contracts, and buying equipment in Texas. Summit Mach. Tool Mfg. Corp. v. Warren Transport, Inc., 920 F.Supp. 722, 726 (S.D. Tex. 1996). Plaintiffs contend that Servicios has contacts with Texas continuous and systematic enough to give rise to general jurisdiction.

Servicios regularly transported cargo between destinations in Mexico and Nuevo Laredo. (Docket No. 27, Exhibit 2 at 12). At the time of the accident, it was doing so using Xtra Lease trailers leased from Xtra Lease's facility in Laredo, Texas. Id. at 7, 12-13, 25. On behalf of Servicios, a third-party company, either Mexican or American, would pick up the trailer from Xtra Lease and take it to be loaded at a forwarding or customs brokerage firm. Id. at 12-13. This was necessary because Servicios' Mexican drivers were not allowed to drive in the State of Texas. Id. at 18. Servicios' client would, through the forwarding or customs brokerage agency, load the trailer and send it through customs into Mexico, to Servicios' yard in Nuevo Laredo. Id. at 12, 15. A Servicios driver would then haul the trailer to its destination in Mexico, pick up a new shipment, and haul that shipment back to Nuevo Laredo in the same trailer. Id. at 12. Servicios would then give the paperwork for the new load to a customs broker, who would arrange for the trailer to be transported into the United States and the cargo unloaded in Laredo. Id. at 12. On at least some occasions, Servicios would have the same trailer under lease for a number of trips from Nuevo Laredo to destinations in Mexico, only returning it to Xtra Lease at the end of the last trip. Id. at 12-13.

As a result of this business, Servicios had a number of contacts, direct and indirect, with the State of Texas. A third-party driver who drove one of the leased trailers at any point between the time it was picked up from Xtra Lease and the time it arrived at Servicios' yard in Nuevo Laredo might be paid by Servicios, or by any of a number of other entities, such as a forwarding agency, American customs broker, Mexican customs broker, logistic company, client, or American transporter. (Docket No. 27, Exhibit 2 at 15.) Plaintiffs claim Servicios is authorized as a carrier in Texas by the United States Department of Transportation, (Docket No. 1 at 2,) although this seems at odds with the company's inability to have drivers operate in Texas. (Docket No. 27, Exhibit 2 at 18.) In any event, "applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another." Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 182 (5th Cir. 1992) (quoting Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (4th Cir. 1971)).

Many of these contacts are related to the lease agreement between Servicios and Xtra Lease in effect at the time of the accident. (Docket No. 27, Exhibit 2 at 12). During the entire time the trailers were being leased by Servicios, Servicios was responsible for any damage that occurred to the trailers. Id. at 15-16. As mentioned above, a third-party company would pick up the trailer from Xtra Lease and, presumably, return it at the end of the lease. The driver from that company would sign for the trailer and note any defects, but had no power to alter the contract. Id. at 12-14, 16-19, 27-28. Plaintiffs allege that there is documentation of 141 such transactions. (Docket No. 27 at 10 (referring to Exhibit 3-B, which was never filed with the Court)). Servicios occasionally used an American repair person if a leased trailer encountered problems while in Laredo. (Docket No. 27, Exhibit 2 at 25-26.)

As a part of their dealings with Xtra Lease, Servicios maintained a letter of credit in a bank in Laredo, Texas. (Docket No. 27, Exhibit 2 at 7.) Servicios was also required to give Xtra Lease a promissory note, to be held as a guarantee, to maintain liability insurance, and to pay taxes, fines, and encumbrances, including those of the United States. (Docket No. 27, Exhibit 17 at 21, 26-28.) The lease agreement between Servicios and Xtra Lease contemplated that actions "related with the execution or unfulfillment" of the lease be brought in the court of Xtra Lease's choice, with Laredo, Texas as one of the alternatives. (Docket No. 27, Exhibit 2, Part 17 at 32.) Servicios had a bank account in Laredo, which it used to pay Xtra Lease, equipment suppliers, and transfer companies, and also to receive certain payments from Mexican clients. (Docket No. 27, Exhibit 2 at 19, 25.) Xtra Lease was paid from the American account on perhaps 50 occasions, and allowed by the terms of the lease to make direct withdrawals from that account. Id. at 5, 26. Negotiations between Servicios and Xtra Lease occurred in Nuevo Laredo, by telephone between Nuevo Laredo and Laredo, and possibly in Laredo as well. Id. at 13. The court concludes that these contacts do not amount to "continuous and systematic" contacts required for general jurisdiction.

In Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376 (5th Cir. 2003), the Fifth Circuit considered a dispute between a Texas carrier, Central Freight, and a New Jersey carrier, APA. The suit was for breach of contract and other claims relating to an Interline Agreement between the parties. The Court found no general jurisdiction over APA in Texas. The Fifth Circuit held that "although APA has federal operating authority in Texas, APA has never registered to do business in the state, has never maintained any kind of business office or records in the state, and has never paid franchise taxes in the state. Likewise, *even though APA routinely*

*arranges and receives interline shipments to and from Texas and apparently sends sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts*, APA has never actually operated any trucks or picked up or delivered any freight in Texas. Even if APA's contacts with the state of Texas have been, in some sense, 'continuous and systematic,' APA's activities, *in toto*, are clearly not substantial enough to justify subjecting APA to suit in the Western District of Texas based on a theory of general personal jurisdiction." Id. at 381 (emphasis added).[2] Servicios may routinely deal with Texas third-party carriers and lease trailers from a Texas facility, but, as with APA, there is no evidence that Servicios has registered to do business in Texas, maintained a business office or records in Texas, or paid taxes other than those limited fees arising from its lease with Xtra Lease.

The Fifth Circuit also found no general jurisdiction in the Felch case, supra, which bears a marked resemblance to the instant case. In Felch, the mother of the plaintiff was killed in a collision with a Lar-Mex tractor trailer being driven by a Lar-Mex employee from Monterrey, Mexico to Nuevo Laredo, Mexico. 92 F.3d at 323. Lar-Mex was a Mexican corporation that, like Servicios, operated in Mexico and had no office in the United States. Id. at 322. Lar-Mex had no employees in the United States, did not advertise in Texas, and had no telephone number in the United States. Id. Lar-Mex did, however, often make and receive telephone calls from customers in Laredo, Texas. Id.

---

[2]The Fifth Circuit did conclude that specific jurisdiction existed because APA's deliberate contacts with Texas were aimed at developing a long-term association between the carriers and thus specifically related to the claims involving breach of their agreement. Thus, in the instant case, there may well be specific jurisdiction over a dispute between Xtra Lease and Servicios concerning their leasing arrangements. However, as already noted above, the personal injury claims in this case do not arise under those contacts.

Lar-Mex rented trailers from Strick Lease, the predecessor of Xtra Lease, in an arrangement similar to that Servicios had with Xtra Lease. Felch at 322. Monthly lease payments were sometimes mailed to Laredo, and sometimes picked up in Nuevo Laredo. Id. As Servicios did, Lar-Mex had an insurance policy to cover vehicles Lar-Mex operated or was otherwise responsible for in Texas. Id. at 323. Lar-Mex had agreements with Laredo companies, giving warranty as to the condition in which Lar-Mex would return trailers belonging to those companies. Id. One such agreement went so far as to contemplate the settlement of disputes in a United States court of law, using United States law, and was signed by a Lar-Mex employee who listed his title as "Gerente General (Laredo)". Id. at 323 n.7. Unlike Servicios, Lar-Mex did, from time to time, operate as a carrier in the United States. Id. at 322. At times, Lar-Mex would drop a trailer in Nuevo Laredo, Mexico; other times, Lar-Mex transported a load over the border into Laredo, Texas. Id. There was, however, no evidence that Lar-Mex ever picked up merchandise in Texas. Id.

In Felch, it was "wholly clear" that the contact between Lar-Mex and Texas failed to rise to the level of general jurisdiction. Felch at 327. The Fifth Circuit quoted approvingly the earlier decision in Wilson v. Belin, which held that the defendants' "various brief contacts with Texas" were not substantial enough to give rise to the expectation that they would be sued in Texas. 20 F.3d 644, 650-51 (5th Cir. 1994). Neither of the Wilson defendants "conducted regular business in Texas. They never made all or even a substantial part of their business decisions in Texas, did not hold directors' meetings in Texas, and did not maintain their files in Texas." Id. The contacts Servicios had with Texas do not differ significantly from those which Lar-Mex had.

The evidence here shows a typical case reflecting the method of importing and exporting goods along the Texas-Mexican border. Servicios is a Mexican company doing business in Mexico. Its mission is to move merchandise from the interior of Mexico to the Mexican border city of Nuevo Laredo, to be imported into the United States, and then to move exports from Nuevo Laredo to the interior of Mexico. Legal intricacies, somewhat influenced by political considerations, require other entities to be involved with the actual passage of merchandise across the international boundary. Servicios' only connection with Texas is that, in performing its function, it uses trailers leased from Xtra Lease. That use necessarily involves ancillary agreements for payment, repair, and responsibility for the trailers. However, as in the cases cited above, the Court concludes that these contacts are not the quality of "continuous and systematic" contacts needed to support general jurisdiction in Texas for a vehicle collision in the interior of Mexico. The Court finds it does not have personal jurisdiction over Defendant Servicios de Transportacion, M.G., S.A. de C.V., and will order that it be dismissed from this case.

DONE at Laredo, Texas, this 15th day of February, 2007.

_____
George P. Kazen
United States District Judge